UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-09109-CV-HURLEY/HOPKINS

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.

KEITH GREENBERG,

    Defendant.
_____/

## ORDER ADOPTING THE REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE, AND HOLDING DEFENDANT KEITH GREENBERG IN CONTEMPT

**THIS CAUSE** comes before the Court upon the Report and Recommendation [ECF No. 67] of Magistrate Judge James M. Hopkins on Plaintiff Securities and Exchange Commission's Application for an Order to Show Cause Why Defendant Keith Greenberg Should Not Be Held In Contempt of Court [ECF No. 27].

## BACKGROUND

**A.    FINAL JUDGMENT**

In 2002, the Court entered Final Judgment of $5,915,346 against Defendant Keith Greenberg.[1] Through default, Greenberg admitted to violating the Securities Act and the Securities Exchange Act, as well as regulations promulgated thereunder.[2] The Final Judgment is

---

[1] Final J. on Disgorgement and Civil Penalties (Oct. 4, 2002) [ECF No. 26].

[2] Final J. of Permanent Inj. by Default Against Defs.' Keith Greenberg and Coyote Consulting and Fin. Servs. (Apr. 4, 2002) [ECF No. 18].

comprised of a civil penalty of $100,000, disgorgement of $3,828,000, and prejudgment interest of $1,987,346.[3]

By 2010, Greenberg had paid nothing.[4] In late 2010, the SEC learned that Greenberg lived an "extravagant lifestyle."[5] On August 11, 2011, Defendant paid $114,592.35 to the SEC,[6] following the sale of a condominium. The SEC applied the payment to Greenberg's civil penalty.[7] Greenberg paid nothing further.

By September 13, 2013, Greenberg owed the SEC $6,883,580.48.[8] Interest accrued at $288 a day.[9] On November 26, 2013, the SEC moved the Court for an Order to Show Cause Why Defendant Keith Greenberg Not Be Held in Contempt of Court.[10] In March 2014, Greenberg began paying $2,500 to $3,750 a month.[11]

The Court granted the SEC's Motion to Show Cause on November 26, 2013, and referred the Motion to Magistrate Judge James M. Hopkins for an evidentiary hearing.[12] The Magistrate

---

[3] Final J. on Disgorgement and Civil Penalties [ECF No. 26].

[4] Mot. for Order to Show Cause at 2 [ECF No. 27].

[5] *Id.*

[6] Keith Greenberg Account, Motion for Order to Show Cause, Silberman Aff., Ex. D, [ECF No. 27-3].

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] [ECF No. 27].

[11] *Id.* at 2; *see supra* note 64

[12] [ECF No. 29].

held three such hearings on October 15, 2014, October 16, 2014, and November 3, 2014, at which he admitted into evidence both testimony and exhibits.[13]  This is what he found:

**B.    FINDINGS OF FACT**

Mrs. Elise Greenberg created the Elise Trust in 1996.[14]  From 1996 to 2011, Keith Greenberg's efforts grew the Elise Trust from $1 million to $6–7 million in assets.[15]

The Elise Trust owns a condominium in Miami, Florida.[16]  The Greenbergs lease this condominium from the Elise Trust.[17]

The Raintree Development Irrevocable Trust owns a house in Goldens Bridge, New York.[18]  The Greenbergs lease this house from the Raintree Trust.[19]

At both their condominium in Miami and their house in New York, the Greenbergs have access to two luxury vehicles and a golf membership, all paid for by the Trusts.[20]

Braintree Properties, LLC is a New York company.[21]  Braintree makes money by investing in medical centers.[22]  From June 2006 to September 2011, Braintree paid $2,151,753 of the Greenbergs' personal expenses.[23]

---

[13] *See* [ECF Nos. 54, 57, 61].

[14] Report and Recommendation at 3 [ECF No. 67] [hereinafter R&R].

[15] R&R at 11; *see* note

[16] R&R at 5.

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.* at 4–5.

3

Greenberg was a consultant for the consulting firm, J.D. Keith, LLC.[24] J.D. Keith had a contract with a medical firm paying $10,000 a month for 22 months.[25] Between 2004 and 2006, the medical firm also personally paid Greenberg $83,000.[26]

In 2006, Braintree sold some of its medical centers to the medical firm.[27] Because of accounting issues, a dispute arose, and Braintree and the medical firm entered into a settlement agreement.[28] Under the agreement, the medical firm agreed to pay Greenberg $600,000 personally over five years, provide him a $38,400 automobile expense, and reimburse him for entertainment and travel expenses.[29] These payments were made payable to the firm J.D. Keith in the amount of $635,538.[30] Greenberg used this money from J.D. Keith to pay his personal expenses.[31]

---

[21] *Id.* at 5.

[22] *Id.*

[23] *Id.*

[24] *Id.* at 6.

[25] *Id.* at 6–7.

[26] *Id.* at 6.

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.* at 7.

Vantage Beach Holdings, LLC was formed in 2010.[32] The Elise Trust owns and funds Vantage Beach.[33] Vantage Beach has recently replaced Braintree in paying the Greenbergs' personal expenses.[34]

Together, the Raintree Trust, Braintree, J.D. Keith, and Vantage Beach are known as "the Entities."

Before the Court entered Final Judgment in 2002, the Greenbergs owed more than $2,000,000 to the IRS.[35] By 2005, that amount totaled $7,750,000.[36] From 2006 to 2008, the Greenbergs made partial payments to the IRS by withdrawing funds from the Entities.[37] The IRS has written off $5 million and as of October 2014, the Greenbergs owed the IRS $675,000.[38]

## DISCUSSION

### A. CONTEMPT STANDARD

A court may enforce a final judgment of disgorgement, including prejudgment interest and civil penalties, through its contempt power.[39] To hold a defendant in contempt, the plaintiff

---

[32] *Id.*

[33] *Id.*; Nov. 3, 2014 Hr'g 40:1–4.

[34] R&R at 7.

[35] *Id.* at 2; Def.'s Pre-Hr'g Br. at 4.

[36] R&R at 2; Def.'s Pre-Hr'g Br. at 4.

[37] R&R at 2; Def.'s Pre-Hr'g Br. at 4.

[38] R&R at 2.

[39] *S.E.C. v. Solow*, 682 F. Supp. 2d 1312, 1329–30 (S.D. Fla.) (Middlebrooks, J.), *aff'd*, 396 Fed. App'x 635 (11th Cir. 2010).

must prove by "clear and convincing" evidence that the defendant violated the final judgment.[40] This requires proving that "(1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order."[41]

If the plaintiff proves its prima facie case, the defendant may assert his "present inability to comply" as a defense.[42] To assert this defense, the defendant must prove "that he has made 'in good faith all reasonable efforts'" to comply with the final judgment.[43] If he does so, the burden shifts to the plaintiff to prove the defendant's "ability to comply."[44]

**B.    REPORT AND RECOMMENDATION**

The Magistrate concluded that Greenberg had the ability to comply with the Final Judgment, but that he did not. Accordingly, the Magistrate recommends that Greenberg be held in contempt. He also recommends that:

> Defendant shall be incarcerated until such time as he satisfies the Judgment to the greatest extent he is able, or provides evidence that he has taken all reasonable efforts to comply with the Judgment yet is unable to make any payment.[45]

The Court must review the Report and Recommendation's legal conclusions, as well as those objected to portions, *de novo*.[46] It must be satisfied that there is "no clear error on the face

---

[40] *Newman v. Graddick*, 740 F.2d 1513, 1525 (11th Cir. 1984).

[41] *Georgia Power Co. v. N.L.R.B.*, 484 F.3d 1288, 1291 (11th Cir. 2007)

[42] *E.g., CFTC v. Wellington Precious Metals, Inc.*, 950 F.2d 1525 (11th Cir. 1992).

[43] *Id.*

[44] *Id.*

[45] R&R at 16.

6

of the record."[47]  Upon this review, the Court will overrule Greenberg's objections, sustain the SEC's, and adopt the Report and Recommendation.

## OBJECTIONS

### A.    OBJECTION 1: "HAD THE ABILITY TO PAY"

Greenberg objects to the Report & Recommendation, arguing that the Magistrate considered Greenberg's past, not present, ability to comply with the Final Judgment.  According to Greenberg, the Court must look only to his present ability to comply.  Defendant objects as follows:

> The Magistrate Judge committed legal error by misapplying the legal standard for civil contempt holding: "In this case, the only issue in dispute is whether Defendant had, at some point since the Judgment was entered in 2002, the ability to pay some or all of that Judgment."  Having misstated the criteria, the Magistrate Judge erroneously concluded that the SEC had met its burden ". . . to show, clearly and convincingly, that Defendant had the ability to pay."[48]

Greenberg is partly correct as what issues are in dispute, but the Magistrate Judge did not err.  The SEC's burden is to prove that Greenberg "had the ability to comply" with the Final Judgment.  The burden then shifts to Greenberg to prove his "present inability to comply."  According to Greenberg, "the Magistrate Judge points to no proof, much less clear and convincing proof, of Mr. Greenberg's present ability to comply."[49]  Such proof, however, is not the SEC's burden.  The burden is *on Greenberg* to prove his present *inability* to comply—only

---

[46] Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C); *LeCroy v. McNeil*, 397 Fed. App'x 664 (11th Cir. 2010).

[47] Fed. R. Civ. P. 72 advisory committee's notes (1983); *Macort v. Prem, Inc.*, 208 Fed. App'x 781, 784 (11th Cir. 2006).

[48] Greenberg Objection at 8 (quoting R & R at 8–9).

[49] *Id.* at 10.

then does the burden shift to the SEC to prove a present *ability*. The Eleventh Circuit states the requirements follows:

> A party seeking civil contempt bears the initial burden of proving by clear and convincing evidence that the alleged contemnor has violated an outstanding court order. Once a prima facie showing of a violation has been made, the burden of production shifts to the alleged contemnor, who may defend his failure on the grounds that he was unable to comply. The burden shifts back to the initiating party only upon a sufficient showing by the alleged contemnor. The party seeking to show contempt, then, has the burden of proving ability to comply.[50]

Because the SEC proved Defendant had the ability to comply, the SEC satisfied its burden. The Magistrate did not apply the wrong legal standard, and appropriately concluded that the SEC had proved its prima facie case for contempt. Greenberg's first objection is overruled.

**B. OBJECTION 2: "PRESENT ABILITY TO COMPLY"**

Next, Greenberg objects to the Report and Recommendation, arguing that the recommended incarceration is unconstitutionally punitive. If Greenberg cannot comply with the Final Judgment, then incarceration would be criminal, not civil, contempt. Greenberg would have 'no keys to his prison.'[51] The question, then, is whether Greenberg proved his "present inability to comply." "Present" means from the time of the contempt hearing to the time of the

---

[50] *CFTC v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir. 1992) (citations omitted).

[51] There are two types of coercive contempt. With civil contempt, "the contemnor is able to purge the contempt and obtain his release by committing an affirmative act." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 844, (1994) (internal quotation omitted). Civil contempt coerces compliance: the contemnor "carries the keys of his prison in his own pocket." *Id.*(citation omitted) (internal quotation marks omitted). With criminal contempt, "the contemnor cannot avoid or abbreviate the confinement through later compliance." Criminal contempt is punitive: "the defendant is furnished no key." *Id.* at 830 (internal quotation marks omitted) (citation omitted).

contempt citation.[52] The Magistrate reviewed Greenberg's arguments on this question, and, based on his findings, concluded each was wanting.

First, the Magistrate found that Greenberg used the Entities to pay his personal expenses. Had he wished, the Magistrate concluded, Greenberg could also use the Entities to pay his Final Judgment.[53] Second, the Magistrate concluded that Greenberg should have asked the Elise Trust whether it would sell one of its cars, or rent one of its homes, to allow Greenberg to pay his Final Judgment. The Magistrate found "it to be beyond belief" that the Elise Trust would not, if it were asked, "agree to a compromise" to avoid Greenberg's contempt.[54] Third, the Magistrate found that Greenberg withdrew money from the Entities to pay the IRS. Defendant, the Magistrate concluded, could do same for the SEC.[55] Finally, the Magistrate concluded that Greenberg's monthly payments, compared to the findings of his "lavish lifestyle," were insufficient to show his good faith to comply with the Final Judgment.[56] Upon *de novo* review, the Court not only agrees with the Magistrate's conclusions, but finds additional support for

---

[52] The Eleventh Circuit's "present" standard derives from the Second Circuit, which held that a defendant could not be held in contempt because "at the time of the contempt citations . . . he did not have the present ability to comply with the court's order." *United States v. Wendy*, 575 F.2d 1025, 1031 (2d Cir. 1978), *cited in United States v. Koblitz*, 803 F.2d 1523, 1527 (11th Cir. 1986), *cited in Jordan v. Wilson*, 851 F.2d 1290, 1292 n.2 (11th Cir. 1988), *quoted in McGregor v. Chierico*, 206 F.3d 1378, 1382 (11th Cir. 2000), *cited in Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1296 (11th Cir. 2002), *quoted in F.T.C. v. Leshin*, 618 F.3d 1221, 1232 (11th Cir. 2010). And the Supreme Court, when reviewing a defendant's "present inability to comply with the order in question," looks to "the showing made by [the defendant] at the [contempt] hearing." *United States v. Rylander*, 460 U.S. 752, 757 (1983).

[53] R&R at 11.

[54] R&R at 11.

[55] *Id.* at 12.

[56] *Id.* 13.

them in the record. The record shows that although Greenberg has no "assets," not even a personal bank account, [57] the Entities have become his piggy bank.

For example, Braintree purchased a Miami condominium for Greenberg in his own name.[58] Braintree paid to renovate the condominium, Braintree made its mortgage payments, and Braintree paid the condominium fees.[59] Vantage Beach, the Entity which replaced Braintree in paying Greenberg's personal expenses, lists Greenberg as the sole checking account signatory.[60] From 2011 to 2012, Vantage Beach paid to renovate the Greenbergs' condominium.[61] Furthermore, the Raintree Trust, which owns the Greenbergs' New York home, has no accounting records and has not filed any tax returns since 2010.[62] As Greenberg testifies: the Raintree Trust "is clearly a, you know, among other things an asset protection, you know, vehicle."[63]

For these, and the reasons cited in the Report, the Magistrate correctly concluded that Greenberg could use some, or all, of the Entities to pay or make reasonable efforts to comply with his Final Judgment. Such efforts could include selling or renting the New York home,

---

[57] Nov. 3, 2014 Hr'g 150:5–8 ("Q: Do you have any available assets to satisfy the existing judgment? A: No, only, only the income that I hope to continue to make to try to continue to satisfy the judgment."); R&R at 3.

[58] Pl.'s Closing Ar., Exhs. 5, 6.

[59] Nov. 3, 2014 Hr'g 70:24–71:2; 72:2–24; Pl.'s Closing Ar., Ex. 56, at Bates No. FR 00001800.

[60] Pl.'s Closing Ar., Ex. 41.

[61] Nov. 3, 2014 Hr'g 40:5–14

[62] *Id.* 106:10–16.

[63] *Id.* 108:17–18.

selling or renting the Miami condominium, terminating the lease on the luxury cars, terminating the golf memberships, and withdrawing funds from the Entities.

### C. "100% OWNED BY THE ELISE TRUST"

The SEC makes one objection to the Report and Recommendation. It objects to the finding that Braintree is "100% owned by the Elise Trust." Because ownership of Braintree is immaterial to the Court's present order, it will sustain the SEC's objection and leave this question unresolved.[64]

### CONCLUSION

Accordingly, it is hereby

**ORDERED** and **ADJUDGED** that:

1. The Report and Recommendation of Magistrate Judge James M. Hopkins [ECF No. 67] is **ADOPTED** in its entirety and incorporated herein by reference.

2. Plaintiff Securities and Exchange Commission's Objections to Magistrate's Report and Recommendation [ECF No. 68] are **SUSTAINED**.

3. Defendant Keith Greenberg's Objections to the Magistrate's Report [ECF No. 69] are **OVERRULED**.

4. Defendant Keith Greenberg is in **CONTEMPT OF THIS COURT**. It is hereby further **ORDERED** that:

    a. Keith Greenberg shall surrender to the custody of the U.S. Marshal's Office for the Southern District of Florida, located at the Paul G. Rogers Federal

---

[64] *See infra* note 11.

Building and U.S. Courthouse, 701 Clematis St., West Palm Beach, Florida, 33401, by 12:00 p.m. on Monday, June 1, 2015.

b. The U.S. Marshals Service **SHALL REQUEST** designation from the Bureau of Prisons for the nearest appropriate federal facility to West Palm Beach, Florida, for Defendant Keith Greenberg's further incarceration.

c. The U.S. Marshals Office for the Southern District of Florida **SHALL NOTIFY** the Court of the fact of Keith Greenberg's appearance or non-appearance on June 1, 2015.

d. Defendant Keith Greenberg **SHALL REMAIN** incarcerated until such time that he has complied with the conditions set forth in the 2002 Final Judgment, or provides evidence that he has made in good faith all reasonable efforts to do so.

**DONE** and **SIGNED** in Chambers at West Palm Beach, Florida this 21st day of May, 2015.

Daniel T. K. Hurley
United States District Judge

*Copies provided to counsel of record*